**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

KATHLEEN WATKINS and :
HARRY WATKINS, :
:
    Plaintiffs, :
: CIVIL ACTION NO.
v. : 1:12-CV-01465-RWS
:
CAMPING WORLD, INC.; :
CAMPING TIME RV CENTERS, :
LLC; THOR MOTOR COACH, :
INC; and BANK OF THE WEST :
(INC.), :
:
    Defendants. :

**ORDER**

This case comes before the Court on Defendants Camping Time RV Centers, LLC ("Camping Time"), Camping World, Inc. ("Camping World"), and Bank of the West, Inc.'s ("Bank of the West") Motion to Dismiss or, Alternatively, For Summary Judgment [2]; Defendant Thor Motor Coach, Inc.'s ("Thor") Motion for Partial Dismissal or, Alternatively, for Partial Summary Judgment [3]; Plaintiffs' Motion to Amend Complaint [6]; Defendants Camping Time and Bank of the West's Renewed Motion to Dismiss or, Alternatively, for Summary Judgment [11]; and, finally, Defendant Thor's Renewed Motion for

Partial Dismissal or, Alternatively, for Partial Summary Judgment [12]. After reviewing the record, the Court enters the following Order.

### I.     Plaintiffs' Motion to Amend Complaint [6]

Plaintiffs move the Court to amend their Complaint to drop Defendant Camping World as a party and to delete all Complaint references to this entity. (Pls.' Mem. in Supp. of Mot. to Amend Compl. ("Pls.' Mem."), Dkt. [6] at 2 of 4.) As Defendants point out (Defs.' Resp. to Pls.' Mot. to Amend Compl. ("Defs.' Resp."), Dkt. [10] at 1-2), Plaintiffs' First Amended Complaint ("Amended Complaint") (Dkt. [7]) was filed within twenty-one days of service of Defendants' initial Rule 12(b) motions and, therefore, may be filed as a matter of right and without leave of Court. Fed. R. Civ. P. 15(a)(1)(B). On this basis, Defendants seek denial of the motion; they do not oppose, however, dropping Camping World as a party. (Defs.' Resp., Dkt. [10] at 2.) Although Plaintiffs need not move the Court for leave to file an amended complaint, their Motion to Amend Complaint [6] is **GRANTED**, as Plaintiffs are permitted to file the Amended Complaint dropping Defendant Camping World as a party.

2

**II. Defendants Camping Time, Camping World, & Bank of the West's Motion to Dismiss or, Alternatively, for Summary Judgment [2] & Defendant Thor's Motion for Partial Dismissal or, Alternatively, for Partial Summary Judgment [3]**

In light of the filing of the Plaintiffs' Amended Complaint (Dkt. [7]), Defendants Camping Time, Camping World, and Bank of the West's Motion to Dismiss or, Alternatively, Motion for Summary Judgment [2] and Defendant Thor's Motion for Partial Dismissal or, Alternatively, for Partial Summary Judgment [3] are **DENIED as moot**.

**III. Defendant Camping Time & Bank of the West's Renewed Motion to Dismiss Plaintiffs' Amended Complaint or, Alternatively, for Summary Judgment ("Camping Time & Bank of the West's Motion to Dismiss") [11]**

   A.   Background

This case arises out of Plaintiffs' purchase of an allegedly defective motor coach. The facts alleged in the Amended Complaint are as follows.[1] On July 16, 2011, Plaintiffs visited the Camping Time showroom and purchased a new 2011 Four Winds Serrano 31X (the "motor coach" or "coach"). (Am. Compl., Dkt. [7] ¶ 7.) Prior to purchasing the coach, Plaintiffs were assured

---

[1] Because the case is before the court on a motion to dismiss, the facts alleged in the Amended Complaint are accepted as true. Cooper v. Pate, 378 U.S. 546, 546 (1964).

3

that it was of high quality and that the dealer would correct all defects in the coach in a timely fashion. (Id. ¶ 8.) Plaintiffs contend that at the time of signing the Purchase Agreement, they were not afforded the opportunity to review the agreement; Plaintiffs state that "the document was presented to them in such a fashion . . . that [P]laintiffs did not get to hold the document and turn it over." (Id. ¶ 9.) Accordingly, Plaintiffs allege, they were unaware of the limitation of remedies found on the back of the purchase agreement, which limitations were never explained to Plaintiffs. (Id. ¶ 10.)

The Purchase Agreement contains the following provisions regarding Plaintiffs' remedies in the event of a defect in the motor coach:

> 10. **WARRANTIES AND EXCLUSIONS**. BUYER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASED . . . WHICH HAVE BEEN PROVIDED BY THE MANUFACTURER. DEALER HAS GIVEN BUYER AND BUYER HAS READ AND UNDERSTOOD A STATEMENT OF THE TYPE OF WARRANTY COVERING THE UNIT PURCHASED . . . BEFORE BUYER SIGNED THE SALES AGREEMENT. . . . EXCEPT WHERE PROHIBITED BY LAW: (i) DELIVERY BY DEALER TO BUYER OF THE WARRANTY BY THE MANUFACTURER OF THE UNIT PURCHASED . . . DOES NOT MEAN DEALER ADOPT THE WARRANTY(S) OF SUCH MANUFACTURER, (ii) BUYER ACKNOWLEDGES THAT THESE EXPRESS

4

WARRANTIES MADE BY THE MANUFACTURER HAVE NOT BEEN MADE BY DEALER . . . AND (iii) DEALER IS NOT AN AGENT OF THE MANUFACTURER(S) FOR WARRANTY PURPOSES EVEN IF DEALER COMPLETES, OR ATTEMPTS TO COMPLETE, REPAIRS FOR THE MANUFACTURER(S). EXCEPT . . . WHERE OTHERWISE PROHIBITED BY LAW: (i) BUYER UNDERSTANDS THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDED BY DEALER FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE UNIT . . . (ii) BUYER UNDERSTANDS THAT THE DEALER MAKES NO WARRANTIES WHATSOEVER REGARDING THIS UNIT . . . AND (iii) BUYER UNDERSTANDS THAT DEALER DISCLAIMS AND EXCLUDES FROM THIS TRANSACTION ALL WARRANTY OBLIGATIONS WHICH EXCEED OR EXIST OVER AND ABOVE THE LEGAL WARRANTIES REQUIRED BY APPLICABLE STATE LAW.

11. **LIMITATION OF DAMAGES**. . . . THE FOLLOWING LIMITATION OF DAMAGES SHALL APPLY IF ANY WARRANTY FAILS BECAUSE OF ATTEMPTS AT REPAIR ARE NOT COMPLETED WITHIN A REASONABLE TIME, OR ANY REASON ATTRIBUTED TO THE MANUFACTURER, INCLUDING MANUFACTURERS WHO HAVE GONE OUT OF BUSINESS. BUYER AGREES THAT IF BUYER IS ENTITLED TO ANY DAMAGES AGAINST DEALER, BUYER DAMAGES ARE LIMITED TO THE LESSER OF EITHER THE COST OF NEEDED REPAIRS OR REDUCTION IN THE MARKET VALUE OF THE UNIT CAUSED BY THE LACK OF REPAIRS. BUYER ALSO

AO 72A
(Rev.8/82)

> AGREES THAT ONCE BUYER HAS ACCEPTED THE
> UNIT, EVEN THOUGH THE MANUFACTURER(S)'
> WARRANTY DOES NOT ACCOMPLISH ITS PURPOSE,
> THAT BUYER CANNOT RETURN THE UNIT TO
> DEALER AND SEEK A REFUND FOR ANY REASON.

(Defs.' Mot. to Dismiss, Ex. 1 (Sales Agreement), Dkt. [11-2] at 4 of 4.)[2]

Camping Time also sold Plaintiffs an extended service contract. (Am. Compl., Dkt. [7] ¶ 11; Defs.' Mot. to Dismiss, Ex. 3 (Service Agreement Declaration Page), Dkt. [11-4].) The service contract provided as follows: "In the event of a Breakdown, take the Unit to the dealer that sold You this Agreement, if at all possible. If not, take the Unit to any licensed Repair Facility." (Am. Compl., Dkt. [7] ¶ 11.) Camping Time, the dealer of Plaintiffs' coach, told Plaintiffs it would make repairs to the coach under the terms of the service contract. (Id.)

Plaintiffs were also given a Limited Warranty by Defendant Thor Motor Coach, Inc. ("Thor"), the manufacturer of Plaintiffs' coach. (Id. ¶ 13.) The

---

[2] Because Plaintiffs reference the Purchase Agreement in the Amended Complaint (e.g., ¶ 10), and because the agreement is central to their claims, the Court may consider it for purposes of Defendants' motion to dismiss. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) ("A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims.").

6

Limited Warranty provided, in pertinent part, as follows:

> **LIMITATIONS AND DISCLAIMER OF IMPLIED WARRANTIES**
> IMPLIED WARRANTIES, IF ANY, ARISING BY WAY OF STATE LAW, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE TERM OF THIS LIMITED WARRANTY AND ARE LIMITED IN SCOPE OF COVERAGE TO THOSE PORTIONS OF THE MOTOR HOME COVERED BY THIS LIMITED WARRANTY. . . .  There is no warranty of any nature made by Warrantor beyond that contained in this Limited Warranty. . . .
>
> **WHAT WE WILL DO TO CORRECT PROBLEMS**
> Warrantor's sole and exclusive obligation is to repair and/or replace, at its option, any covered defect if: (1) you notify Warrantor or one of its authorized servicing dealers of the defect, which is discovered within the warranty coverage period, within ten (10) days of discovering the defect; and (2) you deliver your Motor home to Warrantor or Warrantor's authorized servicing dealer at your cost and expense. . . .  If the repair or replacement remedy fails to successfully cure a defect after Warrantor received a reasonable opportunity to cure the defect(s), your sole and exclusive remedy shall be limited to Warrantor paying you the cost of having an independent third party perform repair(s) to the defect(s). . . .
>
> **DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES**
> THE ORIGINAL PURCHASER OF THE MOTOR HOME . . . SHALL NOT BE ENTITLED TO RECOVER FROM WARRANTOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM ANY DEFECT IN THE

> MOTOR HOME . . . . THE EXCLUSION OF
> CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL
> BE DEEMED INDEPENDENT OF, AND SHALL SURVIVE,
> ANY FAILURE OF THE ESSENTIAL PURPOSE OF ANY
> LIMITED REMEDY.

(Defs.' Mot. to Dismiss, Ex. 2 (Limited Warranty), Dkt. [11-3] at 3 of 5.)[3]

After purchasing the motor coach, Plaintiffs discovered defects in the coach. (Am. Compl., Dkt. [7] ¶ 14.) Plaintiffs notified the dealer and manufacturer of the defects, and both entities participated in repair efforts. (Id. ¶ 15.) The major defects discovered in the coach were, and at present are, (1) lack of heat in the bedroom bathroom near the rear end of the coach; and (2) a leaking windshield. (Id.) Thor told Plaintiffs that the dealer (Camping Time) was its partner in providing Plaintiffs service for the defects and instructed Plaintiffs to first contact the dealer for service. (Id. ¶ 16.) In accordance with this instruction, Plaintiffs returned the coach to the dealer for service on July 12, 2011.[4] (Id. ¶ 17.) Camping Time attempted to repair the windshield among other defects. (Id.) These repairs were billed to Thor. (Id.)

---

[3] See footnote 2, supra (Court may consider Limited Warranty because it is referenced in the Amended Complaint and central to Plaintiffs' claims).

[4] This is the date alleged in the Amended Complaint, despite Plaintiffs' allegation that they did not purchase the coach until July 16, 2011 (Am. Compl., Dkt. [7] ¶ 7).

8

Additional repairs to the coach were needed on July 18, 2011. (Id. ¶ 18.) "Though the repairs were eventually implemented, the coach was out of service to the plaintiffs for a number of days." (Id. ¶ 18.) On August 22, 2011, October 25, 2011, and January 12, 2012, Plaintiffs again sought repairs to the coach. (Id. ¶ 19.) With respect to the October and January repairs, Plaintiffs complained of lack of heat at the rear of the coach and that the windshield was leaking. (Id. ¶ 20.)

During this time Plaintiffs had several conversations with Camping Time and Thor employees. (Id. ¶ 21.) For example, the original delivery dealer spoke with Plaintiffs and told them that the heat problem "was actually a design flaw and that the duct work to the back of the coach had a reducer in it that restricted the airflow to the back." (Id. ¶ 22.) This person informed Plaintiffs that "the manufacturer was installing a heat strip in the bedroom a/c to compensate for the problem." (Id.) Subsequently, a Thor service employee told Plaintiffs that installation of a heat strip in the bedroom would address the heat problem. (Id. ¶ 24.) "Plaintiffs told him that is not a fix because heat strips are not intended to heat rooms, they only are intended to 'take the chill

9

off' until the furnace warms the area." (Id.) "Plaintiffs also mentioned that a heat strip in the bedroom would do nothing to heat the bathroom." (Id.)

"On December 21, 2011, after the coach had been in the Camping World service department for an extensive time with no apparent success in repairs, plaintiffs sent certified letters to the CEO's office of the manufacturer and copied the dealer and the state of Georgia that plaintiffs considered the [coach] that they had purchased to be a lemon and requested that it be bought back." (Id. ¶ 25.) On January 3, 2011, Plaintiffs spoke with a representative of Thor and explained to him the defects in the coach and that the repairs proposed by Thor would not actually fix the defects. (Id. ¶ 26.) Plaintiffs explained their position that the proposed repairs would only address the symptoms of the problems, which was unacceptable to Plaintiffs. (Id.) The representative offered to have a factory representative at the dealer install the heat strip the following week. (Id.) Plaintiffs reiterated their position that this would not fix the problem and was an unacceptable proposal. (Id.)

Subsequently, the same representative of Thor told Plaintiffs that Thor engineers believed that if the coach was returned to the factory, "they could modify the coach and install a second furnace in it to resolve the problem."

10

(Id. ¶ 28.) "Plaintiffs told him that the coach was not designed to have [two] furnaces in it and [P]laintiffs were concerned that Thor would need to cut a hole in the side of the coach to accommodate the installation and didn't know what problems that might cause with the airflow around the coach as [P]laintiffs drove it." (Id.) "Plaintiffs were also concerned about where a second furnace would be located and the space it would occupy as the coach was not designed for a second furnace." (Id.) Plaintiffs inquired of the Thor representative as to whether Thor would buy the coach back if Plaintiffs returned the coach to the factory and Thor was unable to solve the problem. (Id.) "He said if they could not fix it they would do nothing except keep working on it." (Id.) "Plaintiffs told him that was not acceptable . . . ." (Id.)

In late January Plaintiffs spoke to Jenny Mathe in the Camping Time service department. (Id. ¶ 30.) "Jenny told [P]laintiffs that the problem is still not fixed and that the manufacturer has no idea what to do next." (Id.) "She also told [P]laintiffs that the manufacturer was then refusing to pay Camping Time for the time Camping Time had spent trying to fix the coach and so she would not release the coach until it is resolved." (Id.) "She was 'impounding'

11

the coach." (Id.) "Plaintiffs told her Plaintiffs did not want it back until it is fixed properly." (Id.)

On February 6, 2012, Plaintiffs and their counsel wrote Camping Time, Thor, and Bank of the West by certified mail, advising them of the problems with the coach and demanding that the coach be re-purchased from Plaintiffs. (Id. ¶ 38.) Plaintiffs also "gave notice to [Bank of the West] advising of their election to seek refund and revoking their acceptance of the motor home and demanded a full refund of monies paid to date." (Id.) Plaintiffs last saw the coach on February 23, 2012. (Id. ¶ 32.) At that time, "the coach did not appear to have been repaired." (Id.) The two primary defects that remain in the coach are (1) a leaking windshield and (2) a furnace that does not heat the bedroom. (Id. ¶ 36.) "The dealer and manufacturer have had repair opportunities to repair the windshield on July 12, 2011 and October 25, 2011." (Id.) "The dealer and the manufacturer have had more than 100 days of opportunity to repair the furnace defect and the windshield since October 25, 2011, and the furnace remains unrepaired." (Id.) "Plaintiffs have been informed by Thor employees that this furnace defect is a design defect occurring across the model line." (Id.)

12

Based on the foregoing allegations, Plaintiffs raise the following claims against Defendant Camping Time[5]: rejection of defective tender (Count I); revocation of acceptance (Count II); breach of express warranty (Count III); breach of implied warranty of merchantability (Count IV); breach of written warranty under the Magnuson Moss Warranty Act (Count V); and breach of implied warranty under the Magnuson Moss Warranty Act (Count VI). (See generally Am. Compl., Dkt. [7].) On the basis of these claims, Plaintiffs seek relief from their retail installment sales contract (Count VII) against Defendant Bank of the West. (Id. ¶¶ 87-95.)

B. Analysis

1. *The Parties' Contentions*

**i. Defendants Camping Time & Bank of the West**

Camping Time and Bank of the West move to dismiss each of Plaintiffs' claims for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Camping Time and Bank of the West contend that Plaintiffs' claims for rejection of tender and revocation of

---

[5] Thor's Renewed Motion for Partial Dismissal or, Alternatively, for Partial Summary Judgment [12] is discussed in Part IV, infra.

acceptance (Counts I & II) fail in light of Camping Time's disclaimer of warranties and limitations of damages in the Purchase Agreement. (Br. in Supp. of Camping Time & Bank of the West's Mot. to Dismiss ("Camping Time & Bank of the West's Br."), Dkt. [11-1] at 10.) They argue that to the extent Plaintiffs are entitled to a remedy against Camping Time, it is limited to "'the lesser of either the cost of needed repairs or reduction in the market value of the unit caused by the lack of repairs.'" (Id. at 10-11 (quoting Purchase and Sale Agreement, Dkt. [11-2] at 4 of 4).)

Camping Time and Bank of the West argue that Plaintiffs' claims for breach of express warranty (Count III) and breach of implied warranty of merchantability (Count IV) fail in light of Camping Time's disclaimer of warranties in the Purchase and Sale Agreement. (Id. at 17-19.) They seek dismissal of Plaintiffs' claims for breach of written warranty under the Magnuson Moss Warranty Act (Count V) and breach of implied warranty under the Magnuson Moss Warranty Act (Count VI) on grounds that the statute does not apply to Camping Time because Camping Time (1) did not make a written warranty to Plaintiffs and (2) did not enter into a service contract with Plaintiffs, despite having sold them one on behalf of a third party. (Id. at 19-

14

21.) Finally, Camping Time and Bank of the West argue that Plaintiffs' claim against Bank of the West for relief from their installment sales contract is derivative of Plaintiffs' claims against Camping Time; because the latter claims fail as a matter of law, they contend, Plaintiffs' claim against Bank of the West necessarily fails. (Id. at 21-23.)

### ii. Plaintiffs

Plaintiffs do not respond to Defendants' motion to dismiss with respect to Plaintiffs' claims for rejection of defective tender (Count I), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), breach of written warranty under the Magnuson Moss Warranty Act (Count V), breach of implied warranty under the Magnuson Moss Warranty Act (Count VI), or relief from installment sales contract (Count VII). Nor do Plaintiffs otherwise address these claims for relief. The motion to dismiss therefore is unopposed with respect to these claims. See LR 7.2B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Accordingly, Defendants Camping Time and Bank of the West's Motion to Dismiss is **GRANTED** with respect to the claims set out in Counts I, III, IV, V, VI, and VII of the Amended Complaint.

15

In response to Camping Time and Bank of the West's motion to dismiss, Plaintiffs sole argument is that they have stated a claim for revocation of acceptance against Camping Time. (See generally Pls.' Resp. to Camping Time & Bank of the West's Renewed Motion to Dismiss ("Pls.' Resp."), Dkt. [14].) To this end, Plaintiffs argue they are entitled to revoke acceptance of the coach, despite Camping Time's limitation of Plaintiffs' remedies, because (1) the defects in the coach "substantially impair the value of the [coach]" and (2) the remedies provided by Camping Time are "meaningless and ineffectual." (Id. at 3, 9.) The Court considers Plaintiffs' claim for revocation of acceptance below.

### 2. *Revocation of Acceptance (Count II)*

As stated above, Camping Time contends that Plaintiffs' claim for revocation of acceptance fails as a matter of law in light of Camping Time's disclaimer of warranties and limitations of damages. (Camping Time & Bank of the West's Br., Dkt. [11-1] at 10-17.) In particular, Camping Time points to the "Limitation of Damages" clause contained in the Purchase and Sale Agreement, which provides,

> IF ANY WARRANTY FAILS BECAUSE OF ATTEMPTS AT REPAIR ARE NOT COMPLETED WITHIN A REASONABLE TIME, OR ANY REASON ATTRIBUTED TO

16

> MANUFACTURER . . . BUYER AGREES THAT IF BUYER IS
> ENTITLED TO ANY DAMAGES AGAINST DEALER, BUYER
> DAMAGES ARE LIMITED TO THE LESSER OF EITHER THE
> COST OF NEEDED REPAIRS OR REDUCTION IN THE
> MARKET VALUE OF THE UNIT CAUSED BY THE LACK OF
> REPAIRS.

(Id. at 10-11 (citing Purchase and Sale Agreement, Dkt. [11-2] at 4 of 4).) This provision further states, "BUYER ALSO AGREES THAT ONCE BUYER HAS ACCEPTED THE UNIT, EVEN THOUGH THE MANUFACTURER(S)' WARRANTY DOES NOT ACCOMPLISH ITS PURPOSE, THAT BUYER CANNOT RETURN THE UNIT TO DEALER AND SEEK A REFUND FOR ANY REASON." (Purchase and Sale Agreement, Dkt. [11-2] at 4 of 4.) Camping Time argues that to the extent Plaintiffs are entitled to any remedy against Camping Time, the remedy is subject to the foregoing limitations. (Id. at 11.)

Plaintiffs argue that they are entitled to revoke acceptance of the coach, despite Camping Time's limitation of remedies, because the limited remedies provided by Camping Time are "meaningless and ineffectual." (See generally Pls.' Br., Dkt. [14].) In support of this argument, however, Plaintiffs address only the "repair or replacement" remedy offered by Thor in its Limited

17

Warranty. (Id.) Plaintiffs do not address the remedy provided by Camping Time in the Purchase and Sale Agreement, which, as recited immediately above, is limited to the lesser of the cost of needed repairs or reduction in market value of the coach caused by the lack of repairs. (Purchase and Sale Agreement, Dkt. [11-2] at 4 of 4.)

As Plaintiffs argue, revocation of acceptance may be an available remedy under the Uniform Commercial Code even where the seller has attempted to limit the buyer's remedies, "where the exclusion or limitation of remedy fails of its essential purpose . . . ." Jacobs v. Metro Chrysler-Plymouth, Inc., et al., 188 S.E.2d 250, 253-54 (Ga. Ct. App. 1972). Plaintiffs argue that Thor's limited remedy of repair or replacement fails of its essential purpose, but they do not argue that the limited remedy offered by Camping Time—the lesser of the cost of needed repairs or reduction in market value of the coach caused by the lack of repairs—fails of its essential purpose. Therefore, if Plaintiffs are entitled to a remedy against Camping Time, that remedy is limited to the foregoing. Accordingly, Defendants Camping Time and Bank of the West's motion to dismiss is **GRANTED** as to Plaintiffs' claim for revocation of acceptance, set out in Count II of the Amended Complaint.

18

## IV. Thor's Renewed Motion for Partial Dismiss or, Alternatively, for Partial Summary Judgment ("Thor's Motion for Partial Dismissal") [12]

Defendant Thor seeks dismissal, pursuant to Rule 12(b)(6), of "the portions of Plaintiffs' Amended Complaint against it seeking incidental and consequential damages . . . ." (Thor's Mot. for Partial Dismissal, Dkt. [12] at 1.) Thor argues that Plaintiffs are not entitled to incidental and consequential damages in light of the disclaimer of consequential and incidental damages contained in its Limited Warranty. (Br. in Supp. of Thor's Mot. for Partial Dismissal ("Thor's Br."), Dkt. [12-1] at 5-7 (citing Limited Warranty, Dkt. [12-2] at 4 of 5).) Plaintiffs did not file a response to the motion, and therefore the motion is deemed unopposed. LR 7.2B, NDGa. Accordingly, Thor's Motion for Partial Dismissal [12] is **GRANTED**.

## Conclusion

In accordance with the foregoing, Plaintiffs' Motion to Amend Complaint [6] is **GRANTED**. Defendants Camping Time RV Centers, LLC, Camping World, Inc., and Bank of the West, Inc.'s Motion to Dismiss or, Alternatively, For Summary Judgment [2] is **DENIED as moot**. Defendant Thor Motor Coach, Inc.'s Motion for Partial Dismissal or, Alternatively, for

19

Partial Summary Judgment [3] is **DENIED as moot**. Defendants Camping Time RV Centers, LLC and Bank of the West, Inc.'s Renewed Motion to Dismiss Plaintiff's Amended Complaint [11] is **GRANTED**.[6] Defendant Thor Motor Coach, Inc.'s Renewed Motion for Partial Dismissal [12] is **GRANTED**.[7]

In light of these rulings, Defendants Camping Time RV Centers, LLC and Bank of the West, Inc. are **DISMISSED** from the suit. Plaintiffs' claims against Defendant Thor Motor Coach, Inc. remain, with the exception of their claims for consequential and incidental damages.

**SO ORDERED**, this  5th  day of February, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[6] In light of this ruling, the Court need not consider their alternative motion for summary judgment [11].

[7] In light of this ruling, the Court need not consider Thor's alternative motion for partial summary judgment [12].